UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL PAUL MARTEL,<br>    *Plaintiff,*<br>    *v.*<br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br>    *Defendant.* | Civil No. 3:13cv229 (JBA)<br><br>November 3, 2014 |

**RULING ON DEFENDANT'S OBJECTION TO THE RECOMMENDED RULING**

Plaintiff Russell Paul Martel commenced this action under Section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended. He seeks review of the final decision of Defendant, the Commissioner of Social Security, denying his Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI") benefits. On March 5, 2014, Magistrate Judge Margolis issued a Recommended Ruling [Doc. # 23] granting Plaintiff's Motion [Doc. # 17] to Reverse the Decision of the Commissioner, denying Defendant's Motion [Doc. # 22] to Affirm the Decision of the Commissioner, and remanding the matter for further consideration and testimony. Defendant has filed a timely objection [Doc. # 24] to the Recommended Ruling, requesting that the Court reject Judge Margolis's analysis and affirm the Commissioner's decision. For the reasons that follow, Defendant's objection is overruled and the Recommended Ruling is approved and adopted in full.

**I.**  **Background**

The factual and procedural background of this action is presented on pages one through twelve of the Recommended Ruling, which this Court incorporates by reference. Briefly, on December 2, 2010, Plaintiff Russell Martel applied for DIB and SSI benefits,

claiming he had been disabled since July 1, 2007, due to knee and back impairments (*See* Certified Transcript of Administrative Proceedings, dated July 24, 2013 ("Tr.") at 162–69, 198; *see also id.* at 194–203.)  Mr. Martel is a 50-year old man who lives, on and off, with his disabled sister, brother, or friends, and is sometimes homeless.  (*Id.* at 204, 234, *see id.* at 44–45, 47–48.)

On August 10, 2010, Mr. Martel was admitted to Yale New Haven Hospital for a lower gastrointestinal bleed secondary to colonic polyps.  (*Id.* at 311; *see id.* at 331–34.) Over the next several years, Mr. Martel saw doctors at Yale New Haven Hospital regularly—for three colonoscopies (*id.* at 302–03, 309–16, 328–30, 389–90), treatment for pain in both knees (*id.* at 255, 260–63, 273, 290, 294–95, 298–301, 336, 354, 398, 449, 458), his left elbow (*id.* at 260–63, 363, 365–66, 453–56), left ankle (*id.* at 255, 257–59, 272–75, 336, 353–56, 360, 363, 365–66, 457–61), lower back (*id.* at 437–42), and his shoulders (*id.* at 257–59, 273, 354, 365–66, 458), hepatitis C (*id.* at 293–94, 298), numbness and tingling in his elbows, arms, and hands (*id.* at 363, 365–66, 413, 433), and depression (*id.* at 290, 412–13).

Plaintiff was treated primarily by Dr. Oray-Schrom, who completed Residual Functional Capacity (RFC) assessments of Mr. Martel on December 7, 2010 (*id.* at 361–62), and on January 13, 2012 (*id.* at 409–10), as well as a Social Security Administration ("SSA") form relating to Mr. Martel's mental health on February 8, 2011 (*id.* at 373–76). After Mr. Martel's application for disability benefits was denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 104–17; *see id.* at 118–26.)  That hearing was held on March 2, 2012 before ALJ Ronald J. Thomas.  (*Id.* at 40–61.)  Plaintiff was represented by counsel at the hearing and

continues to be represented throughout this action.  (*Id.* at 102–03, 160–61.)  ALJ Thomas issued his decision on March 21, 2012, finding that Mr. Martel had not been under a disability between July 2007 and the date of the ALJ's opinion.  (*Id.* at 20–35.)  That decision was adopted by the Commissioner on December 19, 2012.  (*Id.* at 1–3.)

II.     **Standard of Review**

A.     **Standard of Review of a Magistrate Judge's Recommended Ruling**

The Court reviews *de novo* those portions of the Recommended Ruling to which an objection is made, and may adopt, reject, or modify, in whole or in part, the Recommended Ruling.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

B.     **Standard of Review of a Social Security Disability Determination**

This Court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence."  *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence 'is more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  The substantial evidence standard also applies to inferences and conclusions that are drawn from findings of fact.  *See Gonzalez v. Apfel,* 23 F. Supp. 2d 179, 189 (D. Conn. 1998).

The Social Security Act provides that every individual who suffers from a "disability" is entitled to disability insurance benefits.  *See* 42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

In reviewing disability claims, the agency must follow a five-step process. First, the agency will determine whether a claimant is engaged in substantial gainful activity and second, whether the claimant has an impairment which is of the required duration and which significantly limits her ability to work. If the claimant is engaged in substantial gainful activity or does not have a sufficiently severe impairment, the claim will be denied. *See* 20 C.F.R. § 404.1520(a)–(c). Third, the medical evidence of the claimant's impairment is compared with a list of impairments presumed severe enough to preclude any gainful work, and if the claimant's impairment matches or "equals" one of the listed impairments, she qualifies for benefits without further inquiry. *See* 20 C.F.R. § 404.1520(d).

In considering which medical evidence to rely on, an ALJ must treat "the opinion of a treating physician on the nature or severity of a claimant's impairments [a]s binding if it is supported by the medical evidence and not contradicted by substantial evidence in the record." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see* 20 C.F.R. § 404.1527(c)(2) ("If [an ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."). If an ALJ decides not to give the treating physician's opinion controlling weight, the ALJ will consider the following factors in assigning a lesser weight to the opinion:

4

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

If the claimant does not qualify under the listed impairments at step three, the agency must take the fourth step of determining whether the claimant can perform her own past work, *see* 20 C.F.R. § 404.1520(e)–(f), and if not, take the fifth step of assessing the claimant's present job qualifications, and whether jobs exist in the national economy that claimant could perform. *See* 20 C.F.R. § 404.1520(g); *see also generally Heckler v. Campbell,* 461 U.S. 458, 460–61 (1983). The burden of establishing a disability is on the claimant, and once the claimant demonstrates that she is incapable of performing her past work, the burden shifts to the agency to show that the claimant is capable of pursuing alternative work. *See Balsamo,* 142 F.3d at 80.

### III.   Discussion

In denying Mr. Martel's application for DIB and SSI benefits, ALJ Thomas refused to accord controlling weight to the medical opinions of Mr. Martel's treating physician, Dr. Oray-Schrom. (Tr. at 33.) The ALJ granted "partial weight" to Dr. Oray-Schrom's December 7, 2010 opinion, reasoning that although Dr. Oray-Schrom was Mr. Martel's treating physician, she was not a specialist in orthopedics; "little weight" to her February 2011 mental health assessment because Dr. Oray-Schrom was not a mental health specialist' and "little weight" to her January 3, 2012 opinion because it was unsupported

by medical evidence. (*Id.*) By contrast, ALJ Thomas assigned "significant weight to the [non-examining] State agency's physical consultants' opinions." (*Id.*)

Judge Margolis rejected ALJ Thomas's analysis as inconsistent with the "treating physician rule," which requires ALJs to give controlling weight to the opinions of treating physicians as long as they are supported by medical evidence and not contradicted by substantial evidence in the record. (Rec. Ruling at 15.) Judge Margolis found that contrary to ALJ Thomas's conclusions, the record contains sufficient evidence to support Dr. Oray-Schrom's opinions. (Rec. Ruling at 18–24.)

Defendant urges the Court to find that Judge Margolis "improperly re-weighed the medical evidence" and improperly disregarded the "substantial evidence [that] supports the ALJ's findings[.]" (Def.'s Obj. to Rec. Ruling at 2.) Defendant argues that ALJ Thomas's decision to grant partial weight and little weight to Dr. Oray-Schrom's first and second RFC opinions, respectively, was appropriate and supported by the record, as was his decision to grant little weight to Dr. Oray-Schrom's mental health assessment of Mr. Martel.

### A. Dr. Oray-Schrom's RFC Opinions

Dr. Oray-Schrom completed two RFC assessments of Mr. Martel. The first, dated December 7, 2010, states that Mr. Martel had been diagnosed with arthralygias and hepatitis C and was experiencing bilateral knee pain and left ankle pain. (Tr. at 361–62.) It opines that Mr. Martel could frequently lift less than ten pounds, occasionally lift ten pounds, and never lift more than ten pounds, and that Mr. Martel could not do repetitive reaching, handling, or fingering. (*Id.*) In addition, the RFC states that M. Martel would likely be absent from work more than four times a month and would need to take 15

minute breaks about three times a day. (*Id.*) He would be unable to sit for more than 20 minutes at a time, totaling no more than 3 hours in an 8-hour workday, and he would be unable to stand/walk more than 10 minutes at a time, totaling no more than an hour in an 8-hour workday. (*Id.*) As Defendant admits (Def.'s Obj. to Rec. Ruling at 3), and contrary to ALJ Thomas's findings (*see* Tr. at 33), this RFC compels the conclusion that Mr. Martel is not capable of performing even sedentary work (*see* Rec. Ruling at 20–21).

Defendant contends that ALJ Thomas's assignment of "partial weight" to this RFC was supported by substantial evidence in the record. The Court disagrees. The only reason ALJ Thomas or Defendant put forth in support of giving Dr. Oray-Schrom's first RFC "partial weight" is the fact that she is not a specialist in orthopedics. (*See* Tr. at 33.) However, the SSA regulations clearly mandate that a treating doctor's opinion be given "controlling weight" unless it is "not well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] record. . . ." 20 C.F.R. § 404.1527(c)(2). Factors such as whether or not the doctor is a specialist become relevant *only if* the treating doctor's opinion is not entitled to controlling weight. *See id.* § 404.1527(c). ALJ Thomas erroneously relied on such factors without concluding that Dr. Oray-Schrom's opinion was unsupported by medical evidence or was inconsistent with other substantial evidence in the record. Indeed, the ALJ specifically found that Dr. Oray-Schrom's opinion "was consistent with the medical evidence at that time." (Tr. at 33.) For this reason, and the reasons cited by Judge Margolis in the Recommended Ruling, the Court holds that ALJ Thomas erred in according only partial weight to Dr. Oray-Schrom's first RFC opinion.

7

Dr. Oray-Schrom completed a second RFC opinion of Mr. Martel on January 3, 2012. (*Id*. 409–10.) In this opinion, she noted that Mr. Martel had been diagnosed with osteoarthritis of both knees, back pain, history of elbow injury, history of GI bleed, and hepatitis C, and that his symptoms included elbow pain, knee pain, and back pain. (*Id*.) She opined that Mr. Martel would be able to sit for 15 minutes at a time, for a total of less than one hour in an 8-hour workday and that he would be able to stand/walk for 10 minutes at a time, for a total of less than one hour in an 8-hour workday. (*Id*.) She additionally stated that Mr. Martel could occasionally lift less than 10 pounds but never 10 pounds or more. (*Id*.)

Defendant maintains that the ALJ's assignment of "little weight" to Dr. Oray-Schrom's second RFC opinion is supported by substantial evidence. In according little weight to the opinion, the ALJ reasoned that the doctor had last examined Mr. Martel in March 2011, ten months before completing the RFC, and other medical evidence from that time period demonstrates that Mr. Martel was improving. (*Id*. at 33.) On this point, it is difficult not to conclude, as Judge Margolis did, that the ALJ was "cherry-picking" portions of the record to support his ultimate conclusion. (*See* Rec. Ruling at 25.)

The evidence of improvement to which the ALJ presumably referred[1] is a single note by physical therapist Thom Guidone that Mr. Martel's "pain is decreasing" on February 28, 2011. (Tr. at 401.) The Court was unable to find, and ALJ Thomas does not cite to, any other evidence in the record indicating that Mr. Martel's condition was improving. Indeed, when Dr. Oray-Schrom saw Mr. Martel several weeks later, on

---

[1] The ALJ cited no evidence for his conclusion that "the claimant's condition was improving" in March 2011 when Dr. Oray-Schrom last examined him. (*See* Tr. at 33.)

8

March 25, 2011, Mr. Martel described his pain intensity as an 8. (*Id.* at 398.) Although Dr. Oray-Schrom asserted at that time that she expected the pain management plan to reduce Mr. Martel's pain to acceptable levels, she did not state that she expected Mr. Martel's condition to improve. (*Id.*) Moreover, her prediction regarding Mr. Martel's pain levels evidently did not bear out. Medical records from Mr. Martel's December 30, 2011 appointment with Dr. Anna Evans, another doctor at Yale New Haven Hospital, show that Mr. Martel had been experiencing worsening pain since at least July 2011. (*See id.* at 437–40.) Dr. Oray-Schrom would have been aware of this information when she completed her second RFC on January 3, 2012, having signed off on Dr. Evans's report at 9:01AM that same day. (*See id.* at 440.) For the reasons stated here and in Judge Margolis's Recommended Ruling, the Court holds that ALJ Thomas erred in his assignment of "little weight" to Dr. Oray-Schrom's second RFC.

### B. Dr. Oray-Schrom's Mental Health Assessment

In addition to the two RFC opinions, Dr. Oray-Schrom also completed a mental health assessment of Mr. Martel. In the assessment, dated February 8, 2011, the doctor noted that Mr. Martel suffered from dysthymia (a form of depression) due to his pain and financial difficulties, and that he appeared to be in mild distress due to pain. (*Id.* at 373.) She observed that he had a slightly decreased affect, a slight problem caring for his physical needs and handling frustration properly, an obvious problem performing basic work activities, and a serious problem performing work activity on a sustained basis. (*Id.* at 374–75.)

ALJ Thomas accorded Dr. Oray-Schrom's assessment little weight because she is not a mental health specialist, her opinion was unsupported by clinical findings, she did

9

not refer Mr. Martel to a specialist or prescribe him any medications, and her opinion is inconsistent with Mr. Martel's own statements.  (*Id.* at 28.)  However, as Judge Margolis noted, Dr. Oray-Schrom did several times refer Mr. Martel to a specialist, and she did prescribe him medication for depression (albeit after completing the mental health assessment). (*See* Rec. Ruling at 23 (citing Tr. at 289–93, 412, 446–47).).  Further, her opinion does appear to be supported by the other medical evidence in the record.

For example, a discharge summary dictated on August 13, 2010 by Dr. Matthew Feldman states that Mr. Martel "has been more depressed and drinking more alcohol since [separating from his wife approximately 10 days prior to admission,] approximately 30 beers a day over the last week." (*Id.* at 309.)  Doctor Halima Amjad noted, upon examining Mr. Martel on October 21, 2010, "[Mr. Martel] previously drank to alleviate pain;" "[he] [d]oes feel depressed [due to] pain and inability to work;" and "will refer to psych for counseling re: depression." (*Id.* at 293–94.)  Jessica-Perez-Vega, Social Work Intern, who saw Mr. Martel on November 30, 2010 at Dr. Amjad's recommendation, wrote that although "Mr. Martel [did] not report any symptoms of anxiety or depression," he did "report feeling stressed and sad from time to time, when thinking about his current situations" and she recommended that he continue counseling.  (*Id.* at 289–90.)  Dr. Oray-Schrom's notes from May 22, 2012, subsequent to her completion of the mental health assessment confirm that Mr. Martel was suffering from depression. (*See id.* at 412–13.)  According to Dr. Oray-Schrom, Mr. Mr. Martel reported feeling "desperate due to lack of income, homelessness" and expressed a desire to "talk to a counselor" and a readiness "to start antidepressant meds as well." (*Id.*)  She prescribed him Cymbalta and noted that she would refer him to behavioral health for counseling.

(*Id.*)  Because Dr. Oray-Schrom's mental health assessment is substantially supported by the record and ALJ Thomas's conclusions are not, the Court concludes that ALJ Thomas erred in according it little weight.

III.     **Conclusion**

For the reasons discussed above, Defendant's objection [Doc. # 24] is OVERRULED and the Recommended Ruling [Doc. # 23] is APPROVED and ADOPTED in full.  Plaintiff's Motion [Doc. # 17] to Reverse the Decision of the Commissioner is GRANTED.  Defendant's Motion [Doc. # 22] to Affirm the Decision of the Commissioner is DENIED.  This matter is hereby REMANDED for "further consideration of plaintiff's credibility and residual functional capacity in light of the medical evidence of record[.]"  (Rec. Ruling at 25.)  The Clerk is directed to enter judgment and to close the case.  In addition, the Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Recommended Ruling in this case, and then to the District Judge who issued the Ruling that remanded the case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of November, 2014.